First case this afternoon is People v. Armor. That's 4-1-0-0-5-2-0 for the appellant Michael Vonnemann and for the appellee David Manchin. Please proceed. The defendant was convicted in this case of unlawful possession with intent to deliver cocaine. People's Exhibit 1, 24.9 grams. The cocaine was seized by the police in a search warrant of a residence where admittedly the defendant and Ms. Herbert Beshore lived. The cocaine was seized in a locked box in a locked closet. The defendant said that none of her possessions were in this closet. She did not have a key to the closet. She did admit that she knew there were drugs in the closet, but she didn't know how much drugs were in the closet. The police had her keychain. We know that because at one point she says, I don't have a key to the residence, and they find that there is a key to the residence on her keychain. Most people carry all their keys on a keychain. I think most people would even have keys on their keychain that they don't even know what they are for, but they don't throw them out because there might be something important. So she says she doesn't have a key to the residence. She says she can't get in it. She can't get into these drugs. If she can't get into the drugs, she does not possess the drugs. She does not have control over the drugs. My argument is twofold. One is that the jury instruction on accountability should not be given. The second one is that she was not proven guilty beyond a reasonable doubt because it was not proven guilty that she possessed the drugs. Wasn't there cocaine found on the scales and in the dresser which belonged to her? Possibly, and I say possibly because it was only field tested. They never took that stuff to the lab. The second point is that was never charged. They only charged her with this 24.9 grams. But couldn't there be a reasonable inference that cocaine in the dresser belongs to her? She lives there. She's part of the cocaine operation which extends into the block closet. Well, I would think you'd need a lot more than that. If she was charged with that cocaine, that's one thing. We're talking about the cocaine in the closet. She's charged with that. Is she accountable for the other guy that lives there's actions to be found guilty for that? She shared the bedroom with him, didn't she? She shared the bedroom, but not the closet. And didn't she also sell for him? Well, no. I would say no. Because she said, I sold to four people. Four of her friends. Okay, and where do you suppose she got the cocaine to sell? She got it from Herbert. But does that make her accountable for the actions of Herbert? If Herbert sells drugs to a person, that person possesses the drugs. That person is guilty of possession. That person is not guilty of delivering drugs if all you do is possess the drugs. Now, when she delivered them to somebody else, arguably she's guilty of that. But she wasn't charged with that. You can't be found accountable for the actions of a seller when all you're doing is buying. All you're doing is possessing. It's not accountability. Now, granted, maybe she was guilty of some possession in that house, but we're talking about, and I want to make this clear because I don't know that it was clear to the jury or the judge, we're talking about People's Exhibit 1. 24.9 grand. Not this other stuff. Just 24.9 grand of cocaine. Was there any evidence that she solicited, aided, or begged, or agreed to attempt to aid in the planning and commission of the offense? Well, the offense, again, is 24.9 grams of cocaine. And no, there wasn't. Did she intend to promote or facilitate the commission of this crime, the crime being those 24.9 grams of cocaine? There's no evidence of that. Mere presence, as this court is quite aware, is not sufficient. There's no evidence that she helped Herbert sell the drugs. Nobody came in and said, I bought drugs from Herbert with her help. There's no evidence that she was ever in that closet. I believe the state says, well, she could have broke down the door and got into that. Well, maybe, but there's no evidence of that. You've got to have evidence. You can't go on supposition of what might happen. The state does put a case, People v. Burke, that talks about a joint undertaking. In that case, I believe a woman, a wife, was defended, claiming that it was all her defense stuff. She didn't know anything about it. She should not be held liable for it. The court did find that she was accountable for this action. But I think there's some distinction between Mrs. Burke here and my client. In that case, it was LSD and cannabis. The LSD was found in the freezer. It wasn't in a locked box in a locked closet. The marijuana was found in a closet that had clothes, both men and women's clothes. Again, Mrs. Burke had control. I believe that case stood for the fact that if narcotics found in the premises is under control of the defendant, there's an inference of knowledge and possession, absent of other facts and circumstances, which could leave reasonable doubt in the mind of the trial. In fact, well, that's the key. The control. Did my client have control of these drugs? I don't keep coming back to this, but she didn't. These were leased premises, were they not? I believe so, sure. And who was the lessee? I believe Herbert was. And Herbert paid for the rent. I'm not disputing that. I'm disputing this one thing of drugs, which is what she's charged with. She's not charged with other stuff. She's charged with 24.9 grams of cocaine. I also argue, or will argue, that she was not proven guilty beyond a reasonable doubt because she did not possess these drugs. I would admit that she knew that there was presence of a controlled substance in there. She didn't know how much, but she knew it was in there. But again, she did not have immediate possession or control. Certainly she did not have actual possession. I don't think anybody would dispute that. As far as constructive possession, again, she did not have actual control and did not have the capacity to maintain control over the drugs. She doesn't. She didn't. Why couldn't the jury reasonably infer that she did have access to the closet and that she was lying about the key because she admittedly lied about the key to the front door of the apartment? Well, if that was true, why didn't the police then go through her keys and check it out? I don't know. I'm just saying. I'm not arguing with you about it. I'm just saying maybe a jury could have reasonably inferred that. I would say not reasonably. Why could it be reasonably? She says, I don't have a key. Nobody's disputing it. The police have her keys. I mean, yeah, all I do is, okay, you've got a key. You open up the closet. You open up the lockbox. You're guilty. And I would agree she would be guilty because she admitted from day one. She was willing to lie about not having the key to the front door and I guess, as I understood it, witness them knock her door in or pat her down. Right. And they caught her. They caught her in the lie. Why didn't they catch her in this lie? If it's a lie, they certainly could have. All we know is the police didn't bother to do it because they want, you know, I don't know, did they want to break it in? Did they try it and it didn't work? That doesn't come out. You can make an inference that, you know, that they tried it and it didn't work, that she hid it. I don't know. Nobody asked them. But we know from day one she says, that's not my stuff. Right. So any inference that the jury may have made would be unreasonable in your view if they concluded she did have access to the closet because she may have had the key. I think that's true and I think the other problem is when you throw this accountability structure in, now you got the jury thinking, well, if Herbert's a drug dealer, then maybe she's a drug dealer. I thought she called Herbert and wanted to, she wanted to try to call Herbert to see if she should take the whole blame for it. She did. That may be a loving girlfriend. That doesn't make her a dealer. Why couldn't the jury infer from that what she was? You're concluding one thing and you're saying it's unreasonable to conclude the other. Correct. Sure. Yes, I am. But I think you got to have evidence of these things. You got to have some evidence. There was evidence that she said that. That she said that she wanted, yeah, sure, she said that, would she take the blame. But so, I mean, that doesn't mean anything. There are women and men that might take the blame for an offense that they didn't commit because they love the person, they care about the person. That's not sufficient to say. Or she knew that both of them were going to go down and maybe she should take the sole blame. Well, if she's going to do that, why did she say that's my drugs? Why did she say that? It seems like maybe she was getting ready to do that because if Herbert had told her to, she would have, right, or if she was able to get a hold of him. That's part of the supposition, Your Honor, that there's no facts to that. We do know the facts are that she says I'm not taking responsibility for all the drugs in the house. I'm not taking responsibility. But she thought about taking responsibility. Well, I don't know what she thought about that. Well, she expressed that, didn't she? She expressed that she called her boyfriend and wanted to know what she should do, sure. Because he's the drug dealer. I'm not saying there isn't a drug dealer in this house. I'm saying she lived in this house with a guy who's a drug dealer. I think your problem is she also is a drug dealer, at least on three or four prior occasions. But they're separate. I mean, is she accountable because she sold stuff different than he sold stuff? Again, you get back to what a jury might reasonably infer. You've got the lie about the key, you've got the cocaine on the scales, the cocaine in the dresser, her admission that three or four times before she had sold, she had apparently got the drugs from her boyfriend. I mean, this thing starts billing, and then you're asking us to say a jury couldn't reasonably infer that she was proved guilty. Well, except what we're talking about are these drugs in the lockbox in the lock closet. She wasn't charged with other stuff. Now granted, that's all evidence that she's guilty of possession of other stuff in the house. I'm not disputing that. But she wasn't charged with that. It was up to the prosecutor to charge if he wanted to charge. And we've got to deal with what she's charged with. What if the drugs were found out in a dumpster somewhere? Is she going to be guilty of that? You've got to deal with what she's charged with, not with what is found in her house that she's not charged with. If I may, Your Honor, the state also brings up a Burge case. In that case, the defendant claimed he did not have knowledge of some drugs that were found in a locked freezer. And they point out the defendant was found guilty of that offense. But a couple of things I think they did not point out that I would like to say is that in the Burge case, the defendant admitted being in the house the day before the search warrant happened. Burge was also the guy that the confidential source said he bought drugs from the day before. Mr. Burge fled after the search warrant. And he also told at least one police officer who testified that he knew about the cannabis, but it was not his because he was holding it for someone else. So Mr. Burge admitted controlling possession. That's not the same as my case. If there are any other questions, that's all I have. Okay, you'll have time for rebuttal. Thank you. Mr. Manchin. Good afternoon, Your Honor. May it please the Court, Counsel. In this case, the question on the instruction is a left to the use of discretion standard. And it stated in the title of the instruction, on its theory of the case, and only slight evidence is required. You don't need proof beyond a reasonable doubt for the instruction. And you have more than slight evidence here of accountability. You have the defendant's admissions that she sells drugs. You don't have to, the jury does not have to believe her claim, I only sold three or four times to friends. You have the defendant's own testimony admission that she knows there are drugs in this particular closet. You have the defendant's admissions that any time she wants drugs, Herbert gives it to her for free so she can sell it. You have the other drugs and other drug paraphernalia throughout the house. This is a drug house. The evidence shows that this is a drug house, and the defendant is accountable, could be found accountable, for Herbert's actions as his partner in the dealings. And these dealings would include this closet of drugs that she claims she has no key to. You have the defendant who lied about not even having a key to the house. The jury can disregard her claim she doesn't have a key. And as far as the police not using the key to open the door, the jury can conclude that the key is not on that key ring that the police have, or she's got it hidden somewhere else that the police didn't find. And that's a reasonable inference the jury can conclude. The jury was properly instructed on accountability because this evidence showed that there's an ongoing relationship, an ongoing partnership between Herbert and the defendant to sell drugs out of this house. The defendant knew Herbert was selling drugs. She herself was selling drugs that were provided to her by Herbert from this house. They are partners, so the accountability instruction is proper. And as far as reasonable doubt, the defendant is trying to say, I own and possess everything in this house except in this one closet. And I think neither under the law nor the facts can that be accepted. The facts here show that she is a partner in the drug dealings, and that a reasonable jury could disregard her claim that I don't have a key. As Justice Turner, as you said, the other drugs and drug paraphernalia in the house, you cannot just ignore them as defense counsel wants you to do. Yes, she was charged with the larger amount found in the closet, but the other drugs and other paraphernalia in the house supports an inference that the defendant has knowledge and possession of those drugs that are in that closet, to which she claims she has no key. And I think this case is highly similar to the Bird case in that the court relied upon the defendant's possession or control over the premises to say, yes, you also have possession of the drugs found in this locked freezer to which you say you have no access. I think this is the exact situation we have here, where you have an admitted drug dealer dealing out of this house who said, was trying to decide whether she should throw herself under the bus or whether she should let her boyfriend throw himself under the bus, as far as all the drugs that were found there. The defendant also told the police she got it all. The knowledge is there that she knows that the drugs are there, she knows drugs are being sold there. She is selling drugs out of the house. It is an entirely reasonable conclusion and inference for this jury to conclude that the defendant was guilty beyond a reasonable doubt of possession with intent to deliver the 24 ounces of cocaine that was found in the closets. The jury was not required to believe the claim, I don't have a key. The jury is also not required to believe the defendant's claim, I only sold to three or four friends. I think that the jury was clear to the jury that what she was charged with was the 24 ounces that was in the closets. That was the entire argument below was that, hey, that's not my drugs, that's my boyfriend's drugs. I have nothing to do with it, I have no access to it. They rejected that theory. There is no basis upon which this court should substitute its judgment for that a jury regarded the inferences drawn here based upon all the evidence there showing that, yes, the defendant is in possession of those drugs. If there's anything inconsistent in giving a constructive possession instruction and an accountability instruction or are those just different alternatives that the state is allowed to pursue? There are different alternatives that the state is allowed to pursue and there are cases which deal especially with that, that, yes, you can be accountable and it can be constructive possession, that they both mesh together, that the accountability can lead into or support the inference as far as the constructive possession, that you can be in constructive possession but you can also be accountable at the same time. The jury could find her guilty, setting Herbert aside for the moment, the jury could find her guilty based solely upon the evidence of the drug paraphernalia, the drugs, other drugs in the house, her admissions to the police that she sold drugs out of the house, and the ludicrous nature of the defendant's claim, I don't have a key to the closet. Just based on that, they could find her guilty of possession of drugs through constructive possession of the premises. But when you throw Herbert into the mix with them being virtual partners in drug dealings out of this home, it's even clearer that the defendant is guilty, even if you accept her claim, Herbert keeps the keys to the room, or to this particular closet. Under the defendant's theory... Why is there so much argument over whether or not she's got a key to the closet? I mean, did the police ever even try to find out if she had a key to the closet? Nobody asked if they tried the key, to my recollection. Wouldn't that be a pretty obvious question? I would think so, but to my recollection, nobody asked if they tried the keys to see if there was a key to the closet. It's been a while since I've seen the records, so my recollection may be incorrect, but I do not recall anybody asking the police, did you try her keys on that closet? It is an obvious question that somebody should have asked, you would think, but to my recollection, it was not asked. And the defendant's suggestion that, if the drugs were found in the dumpster, would she be guilty? If you show as much contact with the dumpster as they did with this house, between the defendant and the dumpster, yes, the defendant would be guilty of the drugs in the dumpster, just as if they had found the drugs in the trash can in the backyard of this particular house, because of the connections to it. So it's an entirely different situation than the dumpster behind the court here, and her house over on 3rd Street. There would be no connection. But here, you have the connections to the house, you have the drugs found in the room that the defendant sleeps in regularly. You have her knowledge that drugs are being dealt with that, her knowledge that there are drugs in that closet, and the fact that she has free access to that closet through Herbert, by saying, honey, can I have some drugs? I want to sell them to my friend down the street. The defendant was probably found guilty beyond reason to doubt. Thank you, Your Honor. Thank you. Rebuttal, please. Just a couple of points that were made. My comment about the dumpster, basically, is that if the drugs are found in that dumpster, you deal with that dumpster. I mean, if somebody else has drugs in their house, and they're charged with drugs in a dumpster, it's not true that they possess those drugs in the dumpster. Those are two different things. And I know I hammered away at this, and perhaps the court doesn't agree, but my position is she did not have control over this because of the simple reason it was locked, and that's why the key is still in court. And I would agree with Mr. Manchin. Nobody asked the police if they tried to keep it. It doesn't mean they did. It doesn't mean they didn't. It certainly means that there's no evidence as to what happened to it. And it seems to me, again, if a person has keys, all your keys are going to be on that key chain, and there's no dispute. The police had her keys, because that's how they caught her in the line on the residence key. The only other point I have is it's not necessarily up to her to prove her innocence. I mean, it's obvious, but the state's got to prove her guilty. So the jury's decision has to be reasonable under these facts, with the fact that they have to prove her guilty. Thank you. That's all I have. Thank you. Thanks to both of you, Darius. In cases submitted, the court stands in recess.